### LEICESTER & CONTINENTAL MILLS CO. v. MACON KNITTING CO. et al.

(Circuit Court of Appeals, Third Circuit. May 12, 1902.)

#### No. 15.

PATENTS—CONSTRUCTION OF CONTRACT OF LICENSE—DEFENSE OF SUITS.

> Plaintiffs, who were owners of certain patents relating to knitting machines, entered into a contract with defendant corporation, which was a manufacturer of knitted goods, by which defendant was given an exclusive license to use the patented machines for certain purposes during the life of the patents. The contract contained a clause providing that, in the event of any suit or suits by or against either of the parties concerning the said patents or inventions, "the costs and expenses attending such suit or suits on behalf of any or all of the parties hereto shall be borne and paid equally by the respective parties; that is, one-half by the parties of the first part and one-half by the party of the second part." A suit was brought against defendant on the ground that the machines infringed another ·patent, and plaintiffs, by leave of court, intervened, and defended the same. *Held*, that neither the fact that the machines were held in the suit to be infringements, nor that defendant had refused to defend and the intervention, though acquiesced in, was voluntary, relieved it from its obligation, under the contract, to contribute one-half of the costs and expenses incurred by plaintiffs in defending the suit.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 113 Fed. 844.

Jos. De F. Junkin, for plaintiff in error.

Hector T. Fenton, for defendants in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge. This was an action by the defendants in error against the plaintiff in error upon a contract in writing, and the controlling question is as to the meaning of certain of its terms and their relation to the facts of this case. The contract is as follows:

> "This agreement, made and entered into this tenth day of February, A. D. 1896, by and between Joseph Bennor of the city of Macon, in the county of Bibb and state of Georgia, and the Macon Knitting Company, a corporation organized under the laws of the said state, and having its principal place of business in Macon, aforesaid, parties of the first part, and the Leicester Mills Company, a corporation organized under the laws of the

state of. New Jersey, and having its principal place of business in Phila-
delphia, in the state of Pennsylvania, party of the second part, witnesseth:
Whereas, letters patent of the United States, No. 534,248, dated February
19, 1895, for an improvement in stockings and the art of manufacturing
same, were granted to the said Joseph Bennor; and whereas, certain applica-
tions for letters patent of the United States were filed by the said Joseph Ben-
nor for certain improvements in straight knitting machines for manufactur-
ing fashioned hosiery, as follows: Serial No. 515,911, filed June 28, 1894, and
allowed January 2, 1896, serial No. 517,970, filed July 19, 1894, and allowed
January 2, 1896, and serial No. 556,416, filed October 21, 1895, and allowed
November 18, 1895; and whereas, by an instrument of writing dated Sep-
tember 14, 1894, the said Macon Knitting Company did acquire from the
said Joseph Bennor an undivided one-half of the whole right, title, and
interest in and to all and singular the said inventions and letters patent;
and whereas, the party of the second part is desirous of manufacturing
knitting machines containing said patented improvements in the United
States, and of acquiring for the same territory the exclusive right to manu-
facture thereon knitted stockings of wool, worsted, and merino, but of no
other material, under and in accordance with the said patent 834,248, to-
gether with other knitted goods of wool, worsted, and merino, but of no
other material, and has agreed to pay the parties of the first part therefor,
as hereinafter provided: Now, therefore, the parties hereto, for and in con-
sideration of the premises and of the sum of one dollar each to the other
in hand paid at or before the ensealing of these presents, the receipt whereof
is hereby acknowledged, do covenant and agree to and with each other as
follows, and for themselves, their respective heirs, executors, administra-
tors, and successors:

"First. The parties of the first part hereby license and empower the
party of the second part to manufacture in the United States of America
for its own use therein, to the end of the terms for which said letters pat-
ent are or may be granted, knitting machines containing the above-men-
tioned patented improvements, granting it the sole right in such United
States to use the said machines in the manufacture of knitted goods of
wool, worsted, and merino, but of no other material, and for no other pur-
pose or purposes.

"Second. The parties of the first part further agree to build and furnish
to the party of the second part twenty (20) knitting machines of the con-
struction set out in application, serial No. 556,416, aforesaid, which ma-
chines shall be built by the parties of the first part at the earliest date pos-
sible, and shall be furnished by them to the party of the second part at a
price of ten per cent. (10) above their actual cost of construction; it being
understood and agreed that the said machines shall not exceed in price the
sum of two hundred dollars ($200) per machine; and that the party of the
second part shall have the exclusive right to use the said twenty machines
in the manufacture of knitted goods of wool, worsted, and merino, but
of no other material and for no other purpose or purposes. It is further
understood and agreed that the said machines shall practically be opera-
tive machines, and shall be built in a workmanlike manner, and that the
parties of the first part shall furnish a capable man to instruct a competent
person, designated by the party of the second part, to operate the said
machines, and shall furnish all proper and necessary information for the
practical disposition and erection of said machines in the mills in German-
town, Philadelphia, of the party of the second part, cost of freight and
placing ready to be run to be paid by the party of the second part.

"Third. Upon the delivery and practical operation of the said twenty (20)
machines, the party of the second part agrees to forthwith assign and
transfer to the parties of the first part fifty (50) shares of the capital stock
of the Leicester Mills Company, par value one hundred dollars ($100) per
share, together with bonds of the said company to the value of five thou-
sand dollars ($5,000), such bonds being secured by the mortgage now held
in trust by the Provident Life & Trust Company of Philadelphia.

"Fourth. The party of the second part shall have the privilege of con-
structing, at its own expense, for the special use and purpose above recited,

as many of the said machines embodying said patented improvements as it may desire to construct; and in consideration of such privileges granted to it the party of the second part agrees that on January 1, 1898, or prior to that time if it shall have constructed eighty (80) of such machines, it will forthwith assign and transfer unto the said parties of the first part one hundred (100) more shares of capital stock of the said company of the said par value of one hundred dollars ($100) per share, together with an additional amount of the said bonds thereof to the value of five thousand dollars ($5,000).

"Fifth. It is further agreed between the parties hereto that, in the event of a suit or suits being brought by or against any or all of the parties hereto, under or concerning the said letters patent and inventions, then and in that case the costs and expenses attending such suit or suits on behalf of any or all of the parties hereto shall be borne and paid equally by the respective parties,—that is, one-half by the parties of the first part and one-half by the party of the second part.

"Sixth. It is mutually understood and agreed that Wilson H. Brown, of Philadelphia, Pennsylvania, vice president of the said the Leicester Mills Company, personally guaranties to the parties of the first part, such guaranty being evidenced by his uniting in this agreement, that the aforesaid stock of the said company shall be valued at and be worth par, to wit, one hundred dollars ($100) per share, on the first day of January, 1898; and, further, that, if the parties of the first part so elect, he, the said Brown, will purchase from them at par on January 1, 1898, five thousand dollars ($5,000) of the said stock, and on January 1, 1899, five thousand dollars ($5,000) more of the said stock, and on October 1, 1899, the remaining five thousand dollars ($5,000) of the same."

The fifth clause of this contract, which is directly for consideration, is free from patent ambiguity. It plainly provides that in the event of suit being brought by or against any of the contracting parties, concerning the letters patent to which it refers, the costs and expenses attending such suit shall "be borne and paid equally by the respective parties,—that is, one-half by the parties of the first part and one-half by the party of the second part." And the applicability of this provision to the circumstances of the present case is, we think, scarcely less clear than the language in which it is expressed. The plaintiff in error, in its affidavit of defense, in substance admitted that a suit had been brought against it which did concern the patents and inventions designated in the contract. That suit was brought, it is true, against but one of the contracting parties, but it was not for that reason any less distinctly covered by their stipulation as to costs and expenses. If the party sued, the plaintiff in error, had seen fit to itself make defense, its right to require that the other party, the defendants in error, should bear and pay one-half of the charges thereby incurred would have been unquestionable, and, as the contract made this right reciprocal, it would seem to follow that the defendants in error, who actually did defend, were equally entitled to its enforcement. It is, however, contended that they were not so entitled, because, as is suggested in the brief for the plaintiff in error, it was decided in the case in which the costs and expenses in question accrued that the patents to which the agreement of February 10, 1896, related were invalid; and because, also, the defense which was made in that case was not interposed by the plaintiff in error, but by the defendants in error, and in pursuance of their voluntary intervention therein. Waiving the point that the affidavit of defense does not distinctly state that the patents recited in the agreement of February 10, 1896, were adjudged to

be invalid, we are of opinion that such an adjudication, if admittedly made, would not have constituted a sufficient defense to the action below. The agreement was to be effective in the event of such a suit being brought. The obligation it imposed was, by its express terms, made absolute simply upon the happening of that event, and we are not at liberty to annex to this obligation the further proviso that it should attach only to such suits as could be successfully defended. We are bound to assume that what the parties themselves said is what they intended and all that they intended. Courts cannot add to or alter contracts, and the meaning of this one is too plainly expressed to stand in need of ascertainment by construction. We cannot agree that the refusal of the plaintiff in error to defend the suit which was brought against it relieved it from liability to bear one-half of the disbursements which the defendants in error made in defending it. It was manifestly contemplated that, in the event of any such suit "being brought by or against any or all of the parties," it would in the one case be prosecuted, and in the other be defended. The costs and expenses which it was agreed would be jointly borne were those "attending such suit or suits," and costs of substantial amount do not attend uncontested cases. It is quite apparent, too, that either of these parties might have brought suit, and have required the other, though not assenting to its institution, to contribute to its expense, and yet as to all such suits, whether by or against them or either of them, their agreement was precisely the same. If, therefore, the particular suit in question had been brought against the defendants in error, they, of course, could have defended at joint expense. Were they precluded from doing this because it was actually brought, not against them, but against the plaintiff in error? We think not. The defendants in error were, by leave of the court, and with the acquiescence of the plaintiff in error, permitted to intervene and make defense. Consequently, the defense which they made they had as much right to make as if they had been originally parties defendant. It is not asserted that it was not made in good faith or that the costs and expenses incident thereto were excessive, and, as they attended such a suit as is designated in clause 5, we are of opinion that they were distinctly covered by its terms. It is true that, in their petition to intervene, the defendants in error stated that they stood ready to defend "at their own proper expense, as provided and set forth in said contract of license"; but that this statement was not intended to, and did not, release the plaintiff in error from its liability to ultimately contribute to that expense, is, we think, too clear for argument.

The judgment of the circuit court is affirmed.